UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| DAVID MILLER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | CIVIL ACTION |
| | ) | NO. 12-10504-JGD |
| LUIS SPENCER, Commissioner, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF DECISION AND
ORDER ON DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

March 11, 2014

DEIN, U.S.M.J.

## I.  INTRODUCTION

The plaintiff, David Miller ("Miller"), has brought this civil rights action pro se

against Luis Spencer ("Spencer"), the Commissioner of the Massachusetts Department of

Correction ("DOC"); Thomas Dickhaut ("Dickhaut"), the former Superintendent at the

Souza-Baranowski Correctional Center ("SBCC"); and Christopher Hyde ("Hyde"), the

Property Officer at SBCC.  Miller alleges that in April 2011, while he was an inmate at

SBCC, Hyde improperly opened and read a privileged communication that had been sent

to Miller from his attorney, and placed a telephone call to the attorney without the

plaintiff's permission.  Miller contends that Hyde's conduct violated his rights under both

state law and the federal Constitution, and that Spencer and Dickhaut acquiesced in and

condoned the unlawful behavior by failing to take any disciplinary action against Hyde. By his Verified Complaint, Miller has brought claims against the defendants, in both their official and individual capacities, for breach of the attorney-client privilege (Count I), violations of DOC regulations pertaining to incoming mail (Count II), deprivation of his rights under the First Amendment (Count III), and violations of various state statutory provisions (Count IV). As relief, Miller is seeking an award of both compensatory and punitive damages.

The matter is presently before the court on the "Massachusetts Department of Correction Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment" (Docket No. 32) ("Def. Mot."). By their motion, the defendants contend that Miller has failed to plead or present sufficient facts to support any of his state law claims against them, and that they are entitled to qualified immunity with respect to Miller's constitutional claims. Because the defendants have relied on documents and testimony outside the pleadings, and because Miller does not challenge these materials and has likewise been given the opportunity to submit additional material, this court construes the motion as one for summary judgment pursuant to Fed. R. Civ. P. 56. For all of the reasons detailed herein, this court finds that there are no genuine issues of material fact, and that the defendants are entitled to judgment as a matter of law with respect to each of Miller's claims. Accordingly, the defendants' motion for summary judgment is hereby ALLOWED.

## II.  STATEMENT OF FACTS

### Scope of the Record

As described above, the defendants have filed a motion to dismiss, or in the alternative, for summary judgment.  Pursuant to Fed. R. Civ. P. 12(d), if, on a motion to dismiss for failure to state a claim upon which relief can be granted, "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  However, if the court decides to convert the motion into a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

In the instant case, the defendants have submitted and relied upon evidence outside the pleadings in support of their arguments, and the plaintiff has had a reasonable opportunity to present all material that might be pertinent to his opposition to the motion.  Furthermore, the plaintiff has long been aware that the defendants intended to file a motion for summary judgment.  (See Docket No. 30 (motion by defendants for extension of time to July 5, 2013 to file a summary judgment motion)).  Miller was expressly given the opportunity to seek to obtain discovery if he felt it was needed to respond to the motion for summary judgment.  (See Docket No. 39).  The defendants have accepted Miller's version of the material facts as true for purposes of their motion, and the plaintiff has not disputed the veracity of the materials outside the complaint on which they rely.

Accordingly, this court finds that it is appropriate to deem the motion as one for summary judgment. The following facts are undisputed unless otherwise indicated.[1]

## The Parties

The plaintiff, Miller, was convicted of murder on February 24, 2009, and is currently serving a life sentence. (DF ¶ 1). The incident giving rise to Miller's claims in this case took place in April 2011, when the plaintiff was confined at SBCC. (See Compl. ¶¶ 7-8). At that time, defendant Dickhaut was the Superintendent of SBCC, and defendant Hyde was the Property Officer at the facility. (See id. ¶¶ 5-6). Defendant Spencer is the Commissioner of the DOC. (Id. ¶ 4).

## The April 2011 Incident

At the time of Miller's conviction, J. Drew Segadelli, Esq. was the plaintiff's attorney of record. (DF ¶ 2). However, Attorney Segadelli withdrew as Miller's counsel on February 26, 2009, and on March 6, 2009, Willie J. Davis appeared as the plaintiff's new attorney of record. (Id. ¶¶ 3-4). Accordingly, Attorney Segadelli was no longer representing Miller at the time of the events at issue in this case.

---

[1] The facts are derived from the defendants' Statement of Undisputed Facts ("DF"), which is set forth on pages 2 through 3 of the defendants' motion (Docket No. 32), and the exhibits attached thereto ("Def. Ex. __"). Additionally, under the law of this circuit, "a verified complaint ought to be treated as the functional equivalent of an affidavit to the extent that it satisfies the standards explicated in [Fed. R. Civ. P. 56(c)(4)]." Sheinkopf v. Stone, 927 F.2d 1259, 1262 (1st Cir. 1991). Accordingly, although the plaintiff has not submitted a statement of facts, this court has relied on the factual averments set forth in the Verified Complaint ("Compl.") (Docket No. 1) to the extent they reflect Miller's personal knowledge. See id. at 1262-63 (finding that "factual averments of the [verified] complaint, to the extent demonstrated to come within [plaintiff's] personal knowledge, were fully tantamount to a counter-affidavit, and hence, worthy of consideration" on summary judgment).

In April 2011, while Miller was confined at SBCC, he received a package in the mail, which was run through a fluoroscope, and was determined to contain contraband. (Def. Ex. B ¶ 3).  The package was not marked as "attorney-client privileged," but a return address on the parcel indicated that it had been sent by Miller's former counsel, Attorney Segadelli.  (See DF ¶ 5).  Hyde, who was responsible for processing the package, placed a telephone call to Attorney Segadelli's office in order to confirm the source of the shipment.  (See id. ¶ 6).  Attorney Segadelli was not available, but Hyde was able to speak with a secretary who informed him that it was likely the attorney did send the package.  (Id.).

Pursuant to DOC regulations pertaining to incoming mail, "[i]ncoming privileged mail may be required to successfully pass a fluoroscope examination for contraband material but shall not be opened by an employee except in the presence of the addressee inmate for the sole purpose of ascertaining that its contents are free of contraband."  103 C.M.R. § 481.12(3).  Thus, after confirming that the package had been sent by an attorney, Hyde called Miller to the booking area.  (Compl. ¶ 8(A)).  Hyde informed Miller that he had called the attorney's office to confirm the source of the package.  (Def. Ex. B ¶ 7).  He then proceeded to open it and inspect the contents in Miller's presence. (Id. ¶ 8).  The package contained a pair of sneakers, a chain with a medallion, and a watch.  (Compl. ¶ 7; DF 8).  According to Miller, those were the items that had been on his person at the time he was arrested or at the time of his trial.  (Compl. ¶ 7).  It is undisputed that the DOC classified each of the items as contraband.  (See DF ¶ 9).

Significantly, the package also contained a letter to Miller from Attorney Segadelli.  (Id.).  The letter, which was not labeled "attorney-client privileged," read in substantive part as follows:

> Please find enclosed (1) Silver necklace, (1) Silver religious charm, (1) Casio watch, and (1) pair of Adidas sneakers with inserts.  These items were released and sent to me from the police department.  I am forwarding them to you as I do not have another address for you, take care and I wish you the best of luck.

(Id.; Def. Ex. C).  It is undisputed for purposes of the present motion that Hyde read the letter without Miller's permission.[2]  (DF ¶ 10; Compl. ¶ 8(B)).  Miller contends that the letter was privileged, and that Hyde's actions in reading the letter, and in contacting Attorney Segadelli's office without the plaintiff's consent, violated DOC regulations pertaining to incoming mail from an attorney.  (See Compl. ¶¶ 8-10).

Following the incident involving the letter, Miller filed a grievance with the SBCC Inmate Grievance Coordinator.  (Id. ¶ 10).  The Grievance Coordinator denied the grievance, and Miller filed an appeal with defendant Dickhaut, which also was denied.  (Id. ¶ 11).  On March 20, 2012, Miller filed the instant action claiming that the defendants' actions violated his constitutional and state law rights.  However, Miller has not alleged that he suffered any injury as a result of the defendants' conduct.  (Id.).

---

[2]  Although Hyde claims that he had Miller's consent to read the letter, the defendants have agreed for purposes of their present motion to accept Miller's allegation that he did not give Hyde permission to read the letter from Attorney Segadelli.  (See Def. Mot. at n.3; Def. Ex. B ¶ 11; Compl. ¶ 8(B)).

Additional factual details are described below to the extent they are relevant to this court's analysis.

## III.  ANALYSIS

### A.   Summary Judgment Standard of Review

"The role of summary judgment is 'to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" PC Interiors, Ltd. v. J. Tucci Constr. Co., 794 F. Supp. 2d 274, 275 (D. Mass. 2011) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)).  Accordingly, the burden is upon the moving party to show, based upon the discovery and disclosure materials on file, and any affidavits, "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)).  "A fact is material only if it possesses the capacity to sway the outcome of the litigation under the applicable law." Id. (quotations, punctuation and citations omitted).

"Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue." PC Interiors, Ltd., 794 F. Supp. 2d at 275.  "[T]he nonmoving party 'may not rest upon mere allegation or denials of his pleading,'" but must set forth specific facts showing that there is a genuine issue for trial. LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S. Ct. 2505,

2514, 91 L. Ed. 2d 202 (1986)).  "The Court must view the entire record in the light most

hospitable to the non-moving party and indulge all reasonable inferences in that party's

favor."  PC Interiors, Ltd., 794 F. Supp. 2d at 275.  "Summary judgment is appropriate if,

after viewing the record in the non-moving party's favor, the Court determines that no

genuine issue of material fact exists and the moving party is entitled to judgment as a

matter of law."  Id.

### B.    Count I: Claim for Breach of the Attorney-Client Privilege

In Count I of his Verified Complaint, Miller claims that Hyde's actions violated

the plaintiff's attorney-client privilege.  He further claims that Spencer's and Dickhaut's

failure to correct Hyde's unlawful actions amounted to acquiescence in, and condonation

of, a violation of the DOC regulations pertaining to inmate mail, which are set forth in

103 C.M.R. §§ 481.00, et seq.  For the reasons that follow, this court finds that the

attorney-client privilege is not implicated by the facts of this case, and that there is no

private cause of action under Massachusetts law for any violation of the DOC's mail

regulations.  Therefore, the defendants are entitled to judgment as a matter of law with

respect to Count I.

### Application of the Attorney-Client Privilege

"The attorney-client privilege protects the confidential communications between

client and attorney for the purpose of obtaining legal advice."  Open Software Found.,

Inc. v. U.S. Fid. & Guar. Co., 191 F.R.D. 325, 327 (D. Mass. 2000).  The essential

elements of the privilege are as follows:

> (1) Where legal advice of any kind is sought (2) from a professional
> legal adviser in his capacity as such, (3) the communications relating
> to that purpose, (4) made in confidence (5) by the client, (6) are at
> his instance permanently protected (7) from disclosure by himself or
> by the legal adviser, (8) except the protection be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002) (quoting 8 J.H. Wigmore,

*Evidence* § 2292, at 554 (McNaughton rev. 1961)).  Because communications that fall

within the privilege are permanently protected, the fact that an attorney later withdrew or

was discharged as counsel "does not destroy the privilege.  The privilege continues after

termination of the lawyer-client relationship and extends to other members of the

[attorney's] firm."  Kevlik v. Goldstein, 724 F.2d 844, 849 (1st Cir. 1984).

   In the instant case, the record does not establish that Hyde's conduct in reading the

letter from Miller's former counsel or in placing a telephone call to Attorney Segadelli's

office interfered with or otherwise involved any attorney-client privileged

communications.  The letter consisted of nothing more than a listing of the items

contained in the accompanying package, along with a brief explanation as to why

Attorney Segadelli was sending the items to Miller's address at the prison.  It did not

include any information that could reasonably be construed as confidential.  Nor did it

include any type of legal advice.  As described above, "[t]he privilege protects only those

communications that are confidential and are made for the purpose of seeking or

receiving legal advice."  In re Keeper of the Records (Grand Jury Subpoena Addressed to

XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).  Therefore, the letter cannot be considered

an attorney-client communication.

In fact, although the letter was written by Attorney Segadelli, it did not involve any legal analysis or skill, and could have been written just as easily by a non-lawyer. See Oil Chem. & Atomic Workers Int'l Union ("OCAWIU") v. Am. Home Prods., 790 F. Supp. 39, 41 (D.P.R. 1992) (in evaluating whether attorney communicated in his professional capacity as a lawyer, court considers whether "the task could have been readily performed by a non-lawyer" and whether the expertise of a lawyer was necessary).  For this reason as well, the letter does not satisfy the elements necessary to fall within the scope of the attorney-client privilege.

Similarly, the evidence regarding's Hyde's efforts to confirm the source of the package by making a telephone call to Attorney Segadelli's office does not implicate the attorney-client privilege.  There is no evidence that the incident involved the disclosure of any confidential attorney-client communications, and it is undisputed that Hyde did not even speak with Miller's former counsel.  Therefore, to the extent Count I is premised upon a breach of the attorney-client privilege, this court finds that the claim is insufficient to withstand the defendants' motion for summary judgment.

## Alleged Violation of DOC Regulations

To the extent Count I is based upon an alleged violation of the DOC regulations, Miller lacks standing to assert such a claim.  Therefore, his allegation that Spencer and Dickhaut "acquiesced and condoned the violation of the Promulgated Inmate Mail Regulation 103 CMR 481.00, et seq." is not sufficient to support a cause of action.  (See Compl. ¶ 16).

-10-

It appears that Miller is attempting to bring a claim under 103 C.M.R.

§ 481.11(1)(a), which specifically authorizes inmates to receive letters from an attorney

"in accordance with the procedures set forth in 103 CMR 481.12[.]"  (See Compl. ¶ 9).

As it pertains to incoming mail, 103 C.M.R. § 481.12 in turn provides as follows:

> Incoming privileged mail may be required to successfully pass a
> fluoroscope examination for contraband material but shall not be
> opened by an employee except in the presence of the addressee
> inmate for the sole purpose of ascertaining that its contents are free
> of contraband.  The purpose of the inspection will be to receive and
> receipt any funds enclosed for the inmate; to verify and record the
> receipt of permitted personal property; and to prevent the trans-
> mission of contraband to the inmate.  The processing of funds,
> permitted personal property and contraband found in mail shall be in
> accordance with departmental Personal Property Regulations, 103
> CMR 403.00, et seq.

(emphasis added).  Even where incoming inmate correspondence has not been sent by an

attorney and is not otherwise considered privileged, the regulations specify that "[i]t is the

policy of the Massachusetts [DOC] not to read, censor, or disapprove incoming

correspondence, except where necessary to protect legitimate governmental interests."

103 C.M.R. § 481.15(1).  Therefore, under the regulations, DOC employees are not

authorized to open incoming inmate mail simply for the purpose of reading it.

Even assuming, arguendo, that the challenged conduct violated the incoming mail

regulations, the defendants are still entitled to summary judgment on this claim.  Under

Massachusetts law, "a private cause of action cannot be inferred solely from an agency

regulation." Loffredo v. Ctr. for Addictive Behaviors, 426 Mass. 541, 546, 689 N.E.2d

799, 803 (1998).  Here, the DOC regulations governing the sending and receiving of

inmate mail explicitly provide that they are "not intended to confer any procedural or substantive rights or any private cause of action not otherwise granted by state or federal law." 103 C.M.R. § 481.02. Miller has not cited to any state or federal law that would give him standing to pursue a claim against any of the defendants under the inmate mail regulations. Accordingly, he cannot maintain a claim against Spencer and Dickhaut based on alleged violations of those regulations. See Duclerc v. Mass. Dep't of Corr., Civil Action No. 10-12050-DJC, 2012 WL 6615040, at *10 (D. Mass. Dec. 18, 2012) (granting summary judgment to DOC defendants on claim for violation of DOC regula- tion governing inmate classification where "the regulation does not create a private right of action").

### B.      Count II: Claim for Violation of Regulatory Rights and Regulations

In Count II of his complaint, Miller is seeking to hold each of the defendants liable under 103 C.M.R. §§ 481.00, et seq.  Specifically, Miller claims that Hyde violated the inmate mail regulations by reading his incoming attorney-client privileged mail. (Compl. ¶ 18). He also claims that Spencer and Dickhaut acquiesced in and condoned the violation by failing to enforce those regulations. (Id. ¶ 19). As described above with respect to Count I, there is no private right of action under the DOC mail regulations. Therefore, the defendants are entitled to summary judgment on these claims as well.

### C.      Count III: Alleged Violation of First Amendment Rights

Miller's next claim, which has been brought pursuant to 42 U.S.C. § 1983 ("Section 1983"), alleges that the defendants' acts and omissions with respect to his

incoming mail violated and contributed to the violation of his rights under the First

Amendment to the Constitution.  In support of their motion for summary judgment on this

Count, the defendants argue that Miller has failed to state a claim against any of the

defendants in their official capacities or against Spencer and Dickhaut in their supervisory

capacities, and that they are protected from liability under the doctrine of qualified

immunity.  For the reasons that follow, the defendants have shown that they are entitled

to summary judgment on each of these grounds.  Therefore, the motion is allowed with

respect to Count III.

### Official Capacity Claims

This court finds as an initial matter that Miller cannot maintain a Section 1983

claim against any of the defendants in their official capacities.  Suits against government

officials acting in their official capacities "represent only another way of pleading an

action against an entity of which an [official] is an agent."  Kentucky v. Graham, 473

U.S. 159, 165, 105 S. Ct. 3099, 3105, 87 L. Ed. 2d 114 (1985) (quoting Monell v. New

York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.55, 98 S. Ct. 2018 n.55, 56 L. Ed. 2d

611 (1978)).  Accordingly, Miller's official capacity claims constitute claims against the

DOC.  However, "[t]he First Circuit has previously held that the Massachusetts DOC is

entitled to sovereign immunity as an agency of the Commonwealth."  Hannon v. Beard,

— F. Supp. 2d —, 2013 WL 5518980, at *2 (D. Mass. Sept. 27, 2013) (citing Poirier v.

Mass. Dep't of Corr., 558 F.3d 92, 97 & n.6 (1st Cir. 2009)).  Therefore, "[p]laintiff['s]

claims for money damages against state officials acting in their official capacities are similarly barred." Id.

## Supervisory Liability

The defendants contend that the record does not support a Section 1983 claim against Spencer and Dickhaut for violation of Miller's First Amendment rights because they were not involved in the alleged interference with the plaintiff's incoming mail and they cannot be held vicariously liable for Hyde's actions under a theory of respondeat superior. (See Def. Mot. at 7-9). This court agrees, and finds that Spencer and Dickhaut are entitled to judgment as a matter of law on the claims brought against them under Section 1983 even assuming, arguendo, that there was a violation of Miller's constitutional rights. (But see discussion, infra).

Pursuant to Section 1983, supervisory officials such as Spencer and Dickhaut "incur no *respondeat superior* liability for the actions of their subordinates." Hegarty v. Somerset Cnty., 53 F.3d 1367, 1379 (1st Cir. 1995). Rather, such officials "may only be held liable under § 1983 on the basis of their own acts or omissions." Whitfield v. Melendez-Rivera, 431 F.3d 1, 14 (1st Cir. 2005). Accordingly, as the First Circuit has explained,

> [i]n the context of Section 1983 actions, supervisory liability typically arises in one of two ways: either the supervisor may be a "primary violator or direct participant in the rights-violating incident," or liability may attach "if a responsible official supervises, trains, or hires a subordinate with deliberate indifference toward the possibility that deficient performance of the task eventually may contribute to a civil rights deprivation."

-14-

<u>Sanchez v. Pereira-Castillo</u>, 590 F.3d 31, 49 (1st Cir. 2009) (quoting <u>Camilo-Robles v.</u>

<u>Zapata</u>, 175 F.3d 41, 44 (1st Cir. 1999)).  "In either case, the plaintiff in a Section 1983

action must show 'an affirmative link, whether through direct participation or through

conduct that amounts to condonation or tacit authorization,' between the actor and the

underlying violation."  <u>Id.</u> (quoting <u>Camilo-Robles</u>, 175 F.3d at 44).

    In the instant case, the undisputed facts establish that neither Spencer nor Dickhaut

participated in the alleged interference with Miller's mail.  Nor is there any evidence that

they encouraged Hyde to read the letter, or that they even knew about the incident at the

time it occurred.  In fact, Miller has not presented any facts showing that Spencer ever

learned about the incident prior to the commencement of this lawsuit.  Therefore, he has

failed to establish any affirmative link between Spencer and the allegedly unlawful

conduct.

    To the extent the plaintiff contends that Dickhaut may be held liable based on his

denial of Miller's grievance appeal, that fact alone is insufficient to support his Section

1983 claim.  Miller has not submitted the grievance or described the substance of the

grievance in his complaint.  Nor has he provided any information as to the grounds given

for the denial of the grievance.  Under such circumstances, it would be entirely specula-

tive to conclude that Dickhaut's decision to deny the appeal amounted to condonation or

tacit authorization of Hyde's allegedly unlawful actions.  Therefore, Miller has failed to

raise a genuine issue of fact necessary to defeat summary judgment in favor of Dickhaut.

This court's determination that Miller has failed to establish the affirmative link necessary to support his claim against Dickhaut is also buttressed by the plaintiff's own allegations regarding an earlier incident in which Hyde allegedly interfered with another SBCC inmate's mail.  Specifically, Miller alleges that in November 2010, Hyde improperly opened an unnamed inmate's outgoing attorney-client privileged mail, and was disciplined by Dickhaut as a result of the incident.  (Compl. ¶ 12(A)).  Assuming Miller's description of the events is accurate, it shows that Dickhaut took corrective action to remedy misconduct by his subordinate with respect to inmate mail.  It also undermines any suggestion that Dickhaut acted with deliberate indifference to inmate rights as they relate to correspondence with counsel.

## Qualified Immunity

Finally, the defendants contend that they are entitled to qualified immunity with respect to Miller's individual capacity claims against them under Section 1983.  Because the undisputed facts regarding Hyde's alleged interference with the plaintiff's mail do not support a claim for violation of Miller's First Amendment rights, the defendants have established that qualified immunity applies, and that Hyde is entitled to summary judgment with respect to Count III of the complaint.[3]

---

[3]  In light of this court's prior conclusion that Spencer and Dickhaut are entitled to summary judgment with respect to Miller's First Amendment claim, this court has confined its qualified immunity analysis to the claim against Hyde.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." <u>Id.</u> (quotations and citations omitted).

The determination whether an official is entitled to qualified immunity requires an assessment as to whether the facts alleged or shown by the plaintiff "make out a violation of a constitutional right" and, if so, "whether the right at issue was clearly established at the time of defendant's alleged misconduct." <u>Id.</u> at 232, 129 S. Ct. at 815-16 (quotations and citations omitted). The court has the discretion to determine in which order to address this two-step analysis. <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 269-70 (1st Cir. 2009). Here, the court does not need to go beyond the first step since the undisputed facts do not support a claim for violation of Miller's First Amendment rights. Therefore, Hyde is protected from liability under the doctrine of qualified immunity.

Generally, "a prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003). Accordingly, "[r]estrictions on prisoners' mail are justified only if they 'further[ ] one or more of the substantial governmental interests of security, order, and rehabilitation . . . [and] must be no greater than is necessary or essential to the protection of the particular governmental interest involved.'" Id. (quoting Washington v. James, 782 F.2d 1134, 1139 (2d Cir. 1986)) (alterations and punctuation in original). Moreover, "[i]n balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail[.]" Id. Consequently, when a matter involves incoming "legal mail," courts "have heightened concern with allowing prison officials unfettered discretion to open and read an inmate's mail because a prison's security needs do not automatically trump a prisoner's First Amendment right to receive mail, especially correspondence that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." Sallier v. Brooks, 343 F.3d 868, 874 (6th Cir. 2003).

Notwithstanding the general protection afforded to inmate correspondence, and legal mail in particular, "[n]ot all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney." Id. Furthermore, courts have repeatedly found that "an

isolated incident of mail tampering is usually insufficient to establish a constitutional

violation[,]" especially in the absence of "invidious intent or of actual harm" to the

inmate.  Davis, 320 F.3d at 351.  See also Gardner v. Howard, 109 F.3d 427, 431 (8th

Cir. 1997) (holding that an isolated incident involving the opening of confidential legal

mail, without evidence of improper motive or harm, does not establish a constitutional

violation); Smith v. Maschner, 899 F.2d 940, 944 (10th Cir. 1990) (same); Hudson v.

O'Brien, Civil Action No. 09-10276-RWZ, 2010 WL 2900529, at *3 (D. Mass. Jul. 21,

2010) (holding that isolated incident involving opening and reading of inmate's legal mail

was inadequate to state a constitutional claim).  Rather, in order to support a claim for

violation of a constitutional right, "the inmate must show that prison officials 'regularly

and unjustifiably interfered with the incoming legal mail.'"  Davis, 320 F.3d at 351

(quoting Cancel v. Goord, No. 00 Civ. 2042, 2001 WL 303713, at *6 (S.D.N.Y. Mar. 29,

2001)).

     This court finds that under the circumstances presented in this case, Hyde's

actions in reading Miller's incoming mail without permission is insufficient to establish a

violation of the plaintiff's constitutional rights.  As an initial matter, the record shows that

although the letter came from an attorney, it did not contain any attorney-client privileged

information, did not pertain to an ongoing legal matter, and did not have any impact on

Miller's legal rights or access to the courts.  Furthermore, because the letter came from

Miller's former counsel, and involved no legal advice, no reasonable factfinder could

conclude that Hyde's decision to read it constituted an intrusion upon Miller's

・
・

relationship with his attorney.  Therefore, the undisputed facts presented in this case are

not sufficient to implicate rights protected by the Constitution.

In addition, there are no facts to show that Hyde acted with an improper motive or

that Miller suffered any injury as a result of the challenged conduct.  Nor is there any

evidence that Hyde "regularly and unjustifiably interfered with the incoming legal mail."[4]

Davis, 320 F.3d at 351 (quotations and citation omitted).  For these reasons as well, this

court finds that Hyde's conduct does not support a claim for violation of Miller's First

Amendment rights.[5]  See Hudson, 2010 WL 2900529, at *3 (finding that defendant's

---

[4]  In his complaint, Miller alleges that Hyde violated the inmate mail regulations on at least
two other occasions, including in November 2010, when he was allegedly disciplined by Dickhaut
for opening another inmate's outgoing mail, and in December 2011, when he allegedly failed to
process incoming mail from an inmate's attorney.  (See Compl. ¶ 12 & Exs. 1-2 thereto).  These
allegations are insufficient to establish an actionable violation of constitutional rights.  As an initial
matter, Miller has not established that he has any first-hand knowledge of these incidents.
Accordingly, he has not demonstrated that his allegations are "worthy of consideration" as
evidence on summary judgment.  See Sheinkopf v. Stone, 927 F.2d 1259, 1262-63 (1st Cir.
1991).  Furthermore, "district courts have generally required specific allegations of invidious
intent or of actual harm where the incidents of [mail] tampering are few and thus the implication
of an actionable violation is not obvious on its face."  Davis, 320 F.3d at 351.  Here, Miller has
not presented any evidence showing that Hyde acted with an improper motive with respect to any
inmate's mail, or that any inmate suffered harm as a result of the defendant's actions.

[5]  The defendants argue that Miller also has failed to present sufficient evidence to support
a claim for violation of his Sixth Amendment right to counsel or violation of his Fourteenth
Amendment right of access to the courts.  (See Def. Mot. at 18-20).  Miller has not asserted such
claims.  (See Compl. at Count III (asserting claim for violation of plaintiff's rights under the First
Amendment)).  Even if he had, Miller has not presented any facts to show that Hyde's actions
interfered with the plaintiff's relationship with his attorney or with his ability to pursue a legal
action.  See Davis, 320 F.3d at 351 (to support a claim for denial of access to the courts, plaintiff
must show "that the defendant took or was responsible for actions that hindered a plaintiff's
efforts to pursue a legal claim" (quotations, citations and punctuation omitted)); Smith, 899 F.2d
at 944 (finding no constitutional violation where inmate did not assert that inspection of his mail
"interfered with his communication with counsel or with the courts").  Therefore, Miller cannot
establish that Hyde's conduct infringed upon any of his constitutional rights.

alleged actions in opening and reading a single letter from an attorney, in violation of prison policy, and involving no injury "is but an isolated incident and, alone, insufficient to state a Constitutional claim").  Therefore, Hyde is entitled to summary judgment on Count III of Miller's complaint.

### D.     Count IV: Claims for Violation of State Statutory Rights

Miller's final claim, which is set forth in Count IV, alleges that the defendants violated Mass. Gen. Laws ch. 127, §§ 16, 17 and 32, as well as Mass. Gen. Laws ch. 124, § 1.  However, Miller has not alleged, much less shown, how those statutory provisions relate to the incident at issue in this case or how the defendants' actions constituted a violation of the legislation.  Therefore, summary judgment shall enter in favor of the defendants with respect to Count IV of the Verified Complaint.

Mass. Gen. Laws ch. 127, §§ 16 and 17 pertain to the physical examination of inmates, primarily to determine the presence of communicable diseases.  Specifically, Section 16 provides that "[t]he superintendents of the correctional institutions of the commonwealth . . . shall cause a thorough physical examination to be made by a competent physician of each inmate in their respective institutions committed for a term of thirty days' imprisonment or more."  Mass. Gen. Laws ch. 127, § 16.  It further provides that, in conducting the examination, "special attention shall be given to determining the presence of communicable diseases . . . ."  Id.  Section 17 requires the department of public health to promulgate "[s]pecifications governing the manner and time of such physical examinations[,]" and authorizes the DOC commissioner to seek

further information regarding the prisoners who are the subject of the examinations. Mass. Gen. Laws ch. 127, § 17.  Thus, these statutes have nothing to do with the facts of this case, and the plaintiff has not established a basis for holding any of the defendants liable for violating them.

Mass. Gen. Laws ch. 127, § 32 provides that "[t]he superintendents of the institutions under the supervision of the [DOC] shall treat prisoners with the kindness which their obedience, industry and good conduct merit."  This provision also is irrelevant to the mail incident at issue in this case.  Furthermore, Miller has not presented, or even alleged, any facts showing that Dickhaut interacted with the plaintiff or failed to treat him appropriately.  Therefore, the defendants are entitled to judgment as a matter of law with respect to Miller's claim for violation of Mass. Gen. Laws ch. 127, §§ 16, 17 and 32.

The final statutory provision, Mass. Gen. Laws ch. 124, § 1, sets forth the powers and duties of the DOC commissioner.  For example, but without limitation, it requires the commissioner to maintain safety and security at all state correctional facilities; establish and enforce standards for all such facilities; establish, maintain and administer rehabilitation programs; investigate grievances and inquire into alleged misconduct at state correctional facilities; and maintain adequate records of individuals committed to the custody of the DOC.  See Mass. Gen. Laws ch. 124, §§1(b), (c), (e), (i), and (j).  Again, however, Miller has not explained how the statute relates to the incident involving his incoming mail or how the defendants' actions amounted to a statutory violation.  Accordingly, the defendants' motion for summary judgment is allowed with respect to this claim as well.

## IV.   <u>CONCLUSION</u>

For all the reasons detailed herein, this court finds that there is no genuine dispute as to any material fact, and that the defendants are entitled to judgment as a matter of law pursuant to Fed. R. Civ. P. 56.  Accordingly, the "Massachusetts Department of Correction Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment" (Docket No. 32) is hereby ALLOWED.

  / s / Judith Gail Dein      
Judith Gail Dein
U.S. Magistrate Judge
